286 P.3d 166

**JOSHUA J., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Julia J., Johnathan J., Appellees.**

**Nos. 1 CA–JV 11–0227, 1 CA–JV 11–0228.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 18, 2012.

---

John L. Popilek, P.C. By John L. Popilek, Phoenix, Attorney for Appellant.

Thomas C. Horne, Attorney General By Michael Valenzuela, Assistant Attorney General, Phoenix, Attorney for Arizona Department of Economic Security.

## OPINION

GEMMILL, Judge.

¶ 1 Joshua J. ("Father") appeals the juvenile court's findings of dependency as to his son, J.J., and his daughter, J.L.J. We hold that the juvenile court erred by not completing the hearing within the time limit prescribed by Arizona Revised Statutes ("A.R.S.") section 8–842(C) (Supp.2011).[1] We also decide, however, that Father was not prejudiced by the delay and that the evidence supported the court's findings of dependency. We therefore affirm the dependency determinations.

1. Unless otherwise specified, we cite the current versions of statutes when no material revisions

## BACKGROUND

¶ 2 In A.R.S. § 8–842(C), our Legislature established time limits within which dependency adjudication hearings shall be completed:

> The court may continue the initial dependency hearing for good cause, but, unless the court has ordered in-home intervention, **the dependency adjudication hearing shall be completed within ninety days after service of the dependency petition.** The time limit for completing the dependency adjudication hearing **may be extended for up to thirty days if the court finds good cause or in extraordinary cases as prescribed by the supreme court by rule.**

(Emphasis added.) Additionally, Arizona Rule of Procedure for the Juvenile Court ("Rule") 55(B) provides:

> The dependency adjudication hearing **shall be completed within ninety (90) days of service of the dependency petition** on the parent, guardian or Indian custodian. **The court may continue a dependency adjudication hearing beyond the time prescribed by law only upon a finding of extraordinary circumstances.** Extraordinary circumstances include but are not limited to acts or omissions that are unforeseen or unavoidable. Any party requesting a continuance shall file a motion for extension of time, setting forth the reasons why extraordinary circumstances exist. The motion shall be filed within five (5) days of the discovery that extraordinary circumstances exist. The court's finding of extraordinary circumstances shall be in writing and shall set forth the factual basis for the continuance.

(Emphasis added.)

¶ 3 In April 2011, Child Protective Services ("CPS") took J.J. and J.L.J. into temporary custody following a report of parental neglect and illegal drug use. The Arizona Department of Economic Security ("ADES") filed dependency petitions, alleging that the children were dependent as to Father due to

have been enacted since the events in question.

neglect and abuse.[2] The juvenile court held a preliminary protective hearing on April 28, 2011, and Father accepted service of the petitions at that time. In accordance with § 8–842(C) and Rule 55(B), the 90–day period for completion of the dependency adjudication hearing began to run from April 28, 2011, when Father was served with the dependency petitions. The last day of the 90–day period was July 27, 2011.

¶ 4 A pretrial conference was held on June 20, 2011, and the trial court initially set the contested hearing for August 19. Father protested to the court that he believed the August trial setting was outside of statutory limits and he requested an earlier trial date. The court then set the contested dependency hearing to begin on July 28 and to be continued on August 19.

¶ 5 The minute entries from both juvenile court proceedings (Cause Nos. JD20252 and JD20253) dated June 20, 2011 (filed June 23) indicate on the first page that the "Last Day" is "07/27/2011." This was a correct calculation, as noted above. Unlike the "last day" used in criminal prosecutions for speedy trial purposes, however, these "last days" under § 8–842(C) and Rule 55(B) are deadlines by which the dependency adjudication hearings must be "completed," not merely dates by which a hearing or trial must begin. We have not been provided a transcript of the pretrial conference on June 20, 2011, and we are unable to determine why the juvenile court set this consolidated dependency adjudication hearing to begin on July 28 instead of a date that would have allowed completion by July 27.

¶ 6 The contested dependency hearing was conducted as scheduled on July 28 and August 19. On the first day of the hearing, counsel for Father registered an objection based on the failure to have this hearing completed within the 90 days:

[Father] also wanted me to bring up the issue of having this hearing completed within the 90 days from the date of service. We will agree that the date of service would have been the preliminary protective conference, at which time we accepted service and waived defects of the petition itself. Today's matter is only going to last 30 minutes. It's not at all enough time to deal with all of the matters that are at hand for Your Honor to consider. The remainder of the case is going to be heard sometime in August, I believe around August 17th. It is set for another date that has far more time available at that time. [Father] believes that a reading of the statutes regarding his right to have an adjudication hearing requires that this Court have the hearing completed within 90 days. And having it pushed off to those dates in August would not afford him that protection that's afforded to him.

. . .

There [were] no findings of extraordinary circumstances to allow the Court to go—or the parties to go outside that 90 day benchmark.

Counsel for ADES responded:

The law and the rules that counsel is referring to, I don't believe are interpreted in that manner. There is no case law and there is nothing in the statute that says the dependency adjudication must be completed within 90 days. It says that the hearing must start within 90 days.[3] The father insisted on that and that's why we're here today.

Counsel for Father responded:

The language of the statute [and] the Rule reads that the hearing has to be completed within 90 days. It doesn't define what the hearing is. So, I think conceivably that today is a hearing and today's hearing is going to be completed, but our position is that the entire adjudication hearing itself would be completed today.

**2.** The mothers of J.J. and J.L.J. are not parties to this appeal. This case involves two separate dependency petitions because the children had different mothers. The two separate cases were consolidated on appeal. In juvenile court, the two dependency proceedings were handled together, although not technically consolidated. For convenience in this opinion, we will usually refer to the juvenile court proceedings and filings in the singular.

**3.** ADES acknowledges on appeal that this description of the statute is incorrect.

The juvenile court stated, "Your objection is noted and preserved for the record, sir."

¶ 7 ADES did not at any time file a motion seeking the additional 30 days allowed under § 8–842(C) upon a showing of extraordinary circumstances. If the procedure permitted by § 8–842(C) and Rule 55(B) to seek a 30–day extension of the deadline had been followed and if the court had made the requisite finding to support the extension, the new deadline for completion of the dependency adjudication hearing would have been August 26, 2011.

¶ 8 After the evidentiary hearing held on July 28 and August 19, the juvenile court took the matter under advisement. The court signed its ruling of dependency on October 13, and the ruling was entered on October 14, 2011.

¶ 9 Father timely appeals, and we have jurisdiction pursuant to A.R.S. § 8–235 (2007) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

### "Mandatory" Versus "Directory"

¶ 10 Father argues that the finding of dependency must be vacated because the juvenile court did not complete the dependency adjudication within the prescribed time limit. ADES concedes "the juvenile court did not complete the dependency adjudication hearing within the ninety-day limit" and did not "make a finding of good cause/extraordinary circumstances." To solve this non-compliance with statute and rule, ADES proposes that we interpret "shall" in § 8–842(C) as merely "directory" rather than "mandatory."

¶ 11 The use of the word "shall" in a statute usually indicates the legislature intended a mandatory provision. *Ins. Co. of N. Am. v. Superior Court (Villagrana)*, 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990). "Shall" may be deemed merely directory, however, if the legislative purpose is best achieved by such an interpretation. *HCZ Constr., Inc. v. First Franklin Fin. Corp.*, 199 Ariz. 361, 364, ¶ 11, 18 P.3d 155, 158 (App.2001). "The essential difference between a mandatory and a directory provision is that failure to comply with a directory provision does not invalidate the proceeding to which it relates, while failure to follow a mandatory provision does." *Id.* at 364 n. 1, ¶ 9, 18 P.3d at 158 n. 1 (citing *Dep't of Revenue v. S. Union Gas Co.*, 119 Ariz. 512, 514, 582 P.2d 158, 160 (1978)). As our supreme court has explained in an analogous context:

> A mandatory construction will require that litigation involving substantial rights of both the State and appellees must be dismissed without a determination on the merits. A contrary construction, however, permits the judicial resolution of the questions at issue. When the statute is examined in this light, we are not convinced the Legislature intended that the proceeding should be dismissed if not tried within ninety days, for had the Legislature intended such a consequence, it could have plainly spelled it out in appropriate language. **Language, mandatory in form, may be deemed directory when the legislative purpose can best be carried out by such construction.**

*S. Union Gas Co.*, 119 Ariz. at 514, 582 P.2d at 160(emphasis added).

¶ 12 From the language used and legislative history, it is clear that the Legislature intended that the juvenile court comply with the time limits in § 8–842(C), and the supreme court similarly intended the juvenile court to comply with the provisions of Rule 55(B).

¶ 13 We begin by examining the language of § 8–842(C). This subsection includes the words "may" and "shall." "When the Legislature has used both 'may' and 'shall' in the same paragraph of a statute, we infer that the Legislature acknowledged the difference and intended each word to carry its ordinary meaning." *HCZ Constr.*, 199 Ariz. at 365, ¶ 15, 18 P.3d at 159 (citing *In re Guardianship of Cruz*, 154 Ariz. 184, 185, 741 P.2d 317, 318 (1987) and 2A Sutherland, Statutory Construction § 57.11, at 665 (rev. 4th ed.1984)). The word "may" is used in a permissive sense while "shall" appears to be used in its ordinary "mandatory" sense. This weighs in favor of an imperative meaning for "shall."

¶ 14 The conclusion that the Legislature intended a strong meaning be given to the word "shall" is further demonstrated by the reduction of the statutory time limit for completion of dependency adjudication hearings from 120 days to 90 days. A 120–day deadline was established in 1990 by the Legislature:

> The supreme court shall adopt rules prescribing the circumstances under which the juvenile courts must complete a dependency hearing within **one hundred twenty days** from the date of service of the petition to the parent. The juvenile courts may extend this deadline by thirty days only in critical circumstances and as prescribed by the supreme court by rule.

1990 Ariz. Sess. Laws, ch. 237, § 18 (2d Reg.Sess.) (emphasis added). The corresponding rule—then Rule 17—was amended to include the requirement that a "contested dependency adjudication hearing shall be completed within 120 days of service of the dependency petition." Ariz. R.P. Juv. Ct. 17(a) (1995). Additionally, Rule 17(b) allowed extensions only under limited circumstances: "The time limit for completing the dependency hearing may be extended only as set forth in Rules 17.2 [continuance upon finding of good cause] and 17.3 [extraordinary cases or circumstances]." Ariz. R.P. Juv. Ct. 17(b). The Note to the 1993 amendment to Rule 17 states:

> The rule directly addresses the "speedy trial" issue and provides for 120 days to complete the adjudication of the issue of dependency. The legislature in Laws 1990 Ch. 237 § 18 indicated its preference for a strict 120 day time limit. The underlying theme was that, even though the parties themselves may seek additional time, the best interests of the children mandate expeditious handling of these cases, so that efforts to address family problems and to reunify families can begin.

Ariz. R.P. Juv. Ct. 17, Note to 1993 Amendment.

¶ 15 In 1997 the Legislature reduced the time for completion of dependency adjudication hearings to 90 days. *See* 1997 Ariz. Sess. Laws, ch. 222, § 52 (1st Reg.Sess.). A bill was introduced in the Legislature to expedite permanency and finality, and an amendment created A.R.S. § 8–842, requiring the completion of the dependency hearing within 90 days. H.B. 2255, 43d Leg., 1st Reg. Sess. (Ariz.1997). The Legislature, by reducing the deadline from 120 days to 90 days, underscored its view of the importance of prompt completion of these hearings for the benefit of the children and families involved.

¶ 16 Additionally, A.R.S. § 8–842(C) requires prompt dependency hearings as protection for the rights of parents to their children. Our Legislature has expressly provided that "[t]he liberty of parents to direct the upbringing, education, health care and mental health of their children is a fundamental right." A.R.S. § 1–601(A) (Supp. 2011); *see also* A.R.S. § 1–602 (Supp.2011). The fundamental nature of parents' rights regarding their children has also been recognized by the United States Supreme Court and by the Arizona Supreme Court. *See, e.g., Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ("[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."); *J.D.S. v. Franks,* 182 Ariz. 81, 95, 893 P.2d 732, 746 (1995) (agreeing that "a parent's right to control and custody of his children is a fundamental right, and the state cannot deprive a parent of this relationship without due process").

¶ 17 The 90–day time limit for the completion of a dependency hearing protects children's health and safety as well as the fundamental rights of parents regarding their children. If a child has unjustifiably been removed from his parent, the sooner the issue of dependency is resolved, the sooner the child may be returned home. Similarly, if dependency is proven, a prompt adjudication enhances finality and a child's stability by more quickly initiating either reunification efforts or termination proceedings.

¶ 18 For two important reasons, however, we stop short of declaring "shall" in A.R.S. § 8–842(C) and Rule 55(B) to be mandatory, with a failure to comply rendering

void all subsequent rulings and proceedings. First, as ADES points out, our courts generally apply the interpretative principle that "if a statute 'states the time for performance of an official duty, without any language denying performance after a specified time, it is directory'" rather than mandatory. *See Forino v. Ariz. Dept. of Transp.*, 191 Ariz. 77, 81, 952 P.2d 315, 319 (App.1997) (quoting *Watahomigie v. Bd. of Water Quality Appeals*, 181 Ariz. 20, 32, 887 P.2d 550, 562 (App.1994)). Applying this interpretive principle, we note that neither § 8–842(C) nor Rule 55(B) specifies any consequence—such as rendering the tardy determination void or depriving the court of jurisdiction—for failing to meet the deadlines imposed. As observed by our supreme court in *Southern Union* in an analogous context, "had the Legislature intended such a consequence, it could have plainly spelled it out in appropriate language." 119 Ariz. at 514, 582 P.2d at 160. In the absence of such an express consequence here, we are reluctant to place a mandatory interpretation on the word "shall," which could invalidate all proceedings after expiration of the statutory time limit for completion of the dependency adjudication hearing.

¶ 19 Second, we conclude that the Legislature did not intend to require automatic dismissal of dependency proceedings when the statutory time limit is exceeded. *See, e.g., Ariz. Dep't Econ. Sec. v. Lee*, 228 Ariz. 150, 154, ¶ 19, 264 P.3d 34, 38 (App.2011) (holding that an untimely dependency review "does not halt subsequent proceedings nor mandate releasing a child from temporary custody if it would jeopardize the child's health or safety"). To hold that dependency rulings by the juvenile court are void if made beyond the time limit would contravene legislative intent, because some children might then be returned to unsafe environments.

¶ 20 For these reasons, we decline to hold that the word "shall" in A.R.S. § 8–842(C) and Rule 55(B) is to be construed as mandatory. The legislative purpose is best served by concluding that the language in § 8–842(C) and Rule 55(B) is directory and a violation does not automatically render void all further proceedings.

■ ¶ 21 Nonetheless, absent waiver of the parties, the juvenile court is obligated to adhere to the deadlines found within our dependency statutes in order to comply with the Legislature's intent. Our supreme court has clearly emphasized the importance of compliance with such deadlines:

> **To hold that a provision is directory rather than mandatory, does not mean it is optional—to be ignored at will. Both mandatory and directory provisions of the legislature are meant to be followed.** It is only the *effect* of non-compliance that a distinction arises. A provision is mandatory when failure to follow it renders the proceeding to which it relates illegal and void; it is directory when the failure to follow it does not invalidate the proceedings.

*S. Union*, 119 Ariz. at 514, 582 P.2d at 160 (quoting *Commonwealth v. Kowell*, 209 Pa.Super. 386, 228 A.2d 50, 52 (1967) which was quoting *Pleasant Hills Borough v. Carroll*, 182 Pa.Super. 102, 125 A.2d 466, 469 (1956)) (bolded emphasis added, italics in original).[4]

### Father Has Not Demonstrated Prejudice

■ ¶ 22 The Arizona Constitution stresses that "[n]o cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." Ariz. Const. art. 6, § 27. We will not reverse for a procedural error absent a showing of prejudice. *See In re Marriage of Dorman*, 198 Ariz. 298, 303, ¶ 12, 9 P.3d 329, 334 (App.2000).

■ ¶ 23 Additionally, in the somewhat analogous context of "speedy trial" requirements for criminal prosecutions, a defendant who establishes a violation of the speedy trial

---

4. Both § 8–842(C) and Rule 55(B) require that dependency adjudication hearings be "completed" within 90 days after service of the dependency petition (with a potential extension of 30 days in limited circumstances). In light of our resolution, we do not reach the question whether the juvenile court's ruling is required to be issued within the deadline for "completion" of the hearing.

requirements in our rules is not automatically entitled to a reversal on appeal. *See State v. Vasko*, 193 Ariz. 142, 143, ¶ 13, 971 P.2d 189, 190 (App.1998) (holding that a speedy trial violation without a showing of prejudice does not warrant reversal). Rather, such a defendant must demonstrate prejudice from the inappropriate delay and in doing so the defendant must show how his defense was harmed by the delay. *Id.* at 147, ¶¶ 21–22, 971 P.2d at 194 (stating a conviction will not be reversed absent a showing of error prejudicial to a substantial right). *Cf.* A.R.S. § 13–3987 (2010) (criminal proceedings are not invalidated unless prejudice is shown).

■■■ ¶ 24 We similarly conclude that a parent, to obtain appellate relief, must demonstrate prejudice from the juvenile court's failure to comply with the deadlines in A.R.S. § 8–842(C) and Rule 55(B).

■■■ ¶ 25 The State argues that Father was not prejudiced by the court's failure to comply with the time limit. We agree that Father has not demonstrated any probability that the outcome of the dependency proceeding would have been different if there had been no delay. *Cf. State v. Brady*, 105 Ariz. 190, 196, 461 P.2d 488, 494 (1969) (in a speedy trial analysis in a criminal case, the threshold test for proving prejudice is whether there was reasonable probability that a different result might have occurred had there been no inappropriate delay).

¶ 26 Father asserts that the dependency action caused "trauma" based on the "forced separation" of parent and child. Father does not, however, identify evidence in the record to satisfy his burden of demonstrating specifically how he was prejudiced by the delay here. Nor does his assertion demonstrate any likelihood that the outcome of the dependency action would have changed had the juvenile court complied with the deadlines in § 8–842 and Rule 55(B).

### The Evidence Supported A Finding Of Dependency

■■■ ¶ 27 We now turn to Father's substantive argument that there was no reasonable evidence to sustain the juvenile court's findings of dependency under A.R.S. § 8–201(13) (Supp.2011).

¶ 28 In accordance with § 8–201(13), a dependent child is a child adjudicated to be:

(i) In need of proper and effective parental care and control and who has no parent or guardian, or one who has no parent or guardian willing to exercise or capable of exercising such care and control.

(ii) Destitute or who is not provided with the necessities of life, including adequate food, clothing, shelter or medical care.

(iii) A child whose home is unfit by reason of abuse, neglect, cruelty or depravity by a parent, a guardian or any other person having custody or care of the child.

■■■ ¶ 29 In dependency proceedings, the best interest of the child is paramount, and we afford broad discretion to the juvenile court. *See Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21, 119 P.3d 1034, 1038 (App.2005) (citing *Ariz. Dep't of Econ. Sec. v. Super. Ct.*, 178 Ariz. 236, 239, 871 P.2d 1172, 1175 (App.1994)). We view the evidence adduced in dependency proceedings in a light most favorable to sustaining the juvenile court's findings. *Id.*

¶ 30 The juvenile court heard testimony from a CPS investigative case manager, who had visited Father's residence where the children were located and testified regarding the conditions therein. She observed that the ceiling of the home was bowed and various possessions and debris were strewn all over the floor and the countertops. She also testified that the home had no electricity and no running water, and she described seeing rotten food and smelling the odor that accompanied it.

¶ 31 The case manager notified law enforcement of the condition of the house and they contacted Surprise City Code Enforcement ("SCCE"). SCCE inspected the exterior of the home and determined that there were multiple code violations that required remedial effort or the home would be condemned.

¶ 32 Furthermore, a half-buried water heater was found in the yard next to the home with an open flame heating the water inside the heater. The fire department extinguished the flame and deemed it unsafe. The case manager also testified that the children had excessive tardies and absences from school.

¶ 33 The case manager found drug paraphernalia that looked like a clear glass pipe with black residue inside it. The pipe was found on the floor next to the refrigerator—meaning the children had access to the paraphernalia. After removal of the children, Father submitted to random drug screening and tested positive for methamphetamine.

¶ 34 We conclude that the juvenile court's determination of dependency was supported by substantial evidence.

### CONCLUSION

¶ 35 We hold that "shall" in A.R.S. § 8–842 and Rule 55(B) is directory rather than mandatory and a violation of the time limits does not automatically render void all subsequent proceedings. At the same time, we emphasize that § 8–842 and Rule 55(B) impose real deadlines, not mere guidelines. In this proceeding, the dependency adjudication hearing was not completed within the 90–day time limit and there was no effort by ADES to seek or the court to invoke the potential 30–day extension. Accordingly, the juvenile court erred. Before we will reverse on appeal on the basis of that error, however, Father must show prejudice from the delay. On this record, Father has not established that he was prejudiced by the delay. For these reasons, we affirm.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge, and PHILIP HALL, Judge.