NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

K.C., *Appellant*,

*v.*

DEPARMENT OF CHILD SAFETY, DEANDRA G., *Appellees*.

No. 1 CA-JV 18-0270
FILED 1-17-2019

Appeal from the Superior Court in Maricopa County
No. JD 35934
The Honorable Pamela Hearn Svoboda, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Phoenix
*Counsel for Appellant K.C.*

Denise L. Carroll, Scottsdale
*Counsel for Appellee Mother*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Arizona Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1        K.C. appeals from the superior court's orders finding him dependent with regard to Deandra G. ("Mother") and setting a case plan of family reunification. He argues the superior court erred during the initial dependency hearing by denying his right to counsel, denying his due-process rights to notice and an opportunity to be heard, and by not ordering his attendance at the hearing. Because the superior court conducted the initial dependency proceeding in accordance with the relevant statutes and the Rules of Procedure for the Juvenile Court and did not abuse its discretion in finding K.C. dependent, we affirm.

## BACKGROUND

¶2        K.C. was born in April 2002. In June 2018, a guardian ad litem filed a dependency petition alleging that K.C. had been referred to juvenile delinquency court multiple times and that Mother was unable to control him, rendering her unable to provide adequate parenting. The petition noted the alleged instances of K.C. engaging in assaults on Valley Metro passengers, truancy from school, marijuana use, aggravated robbery, criminal trespass and damage, and other violations of his juvenile probation restrictions.

¶3        The superior court held an initial dependency hearing regarding Mother, but she did not appear. Finding that Mother had failed to appear without good cause, thereby waiving her rights to contest the allegations in the dependency petition, the court found K.C. dependent. K.C. was also not present at the hearing. The court appointed an attorney to represent K.C. and ordered that he be transported to the next hearing if he was in detention.

¶4        In July, the superior court held a dependency disposition hearing. K.C.'s appointed attorney was present, but K.C. was not and appeared telephonically from a taxi cab partway through the hearing. K.C.'s attorney objected to proceeding with disposition and moved to

defer—arguing that K.C. was "a bit bothered by not being present" for the initial hearing, that DCS had changed its recommendation from remain-with-the-family to family reunification, and that the court needed more information regarding Mother's failure to appear, K.C.'s psychological and educational needs, and restoration services in order to proceed with an appropriate disposition—but the court denied the request. Mother agreed to participate in parenting and family counseling services, and the court set the case plan as family reunification.

## DISCUSSION

¶5        We review an order adjudicating a child dependent for an abuse of discretion. *Shella H. v. DCS*, 239 Ariz. 47, 50, ¶ 13 (App. 2016). The superior court abuses its discretion when it commits an error of law, when it reaches a conclusion without considering evidence, or when the record does not provide substantial evidence supporting its findings. *Schickner v. Schickner*, 237 Ariz. 194, 197, ¶ 13 (App. 2015). The bests interests of the child are paramount in dependency proceedings, and we afford broad discretion to the superior court. *Joshua J. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 417, 424, ¶ 29 (App. 2012).

¶6        K.C. first argues the superior court denied him his right to counsel at the initial dependency hearing. K.C. did not raise this objection with the superior court, and we therefore review only for fundamental error. *See Louis C. v. DCS*, 237 Ariz. 484, 489, ¶ 20 (App. 2015) (assuming without deciding that fundamental error review is available to a parent challenging a dependency adjudication). To establish fundamental error, the complainant must first show that trial error exists, and then show that the error went to the foundation of the case, took from the defendant a right essential to his defense, or was so egregious that he could not possibly have received a fair trial. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018); *Monica C. v. Ariz. Dept. of Econ. Sec.*, 211 Ariz. 89, 94, ¶ 24 (App. 2005). K.C. has not established that the superior court erred.

¶7        A juvenile has the right to be represented by counsel "[i]n all proceedings involving offenses, dependency or termination of parental rights that are conducted pursuant to this title *and* that may result in detention." A.R.S. § 8-221(A) (emphasis added). K.C. was not at risk of detention as a direct consequence of being found a dependent child, and therefore had no absolute right to his own attorney during the course of the dependency proceedings. *See* A.R.S. § 8-201(16) ("'Detention' means the temporary confinement of a juvenile who requires secure care in a physically restricting facility that is completely surrounded by a locked and

physically secure barrier with restricted ingress and egress for the protection of the juvenile or the community pending court disposition or as a condition of probation."); *see also Yavapai Cty. Juv. Action No. J-8545*, 140 Ariz. 10, 16 (1984) ("[D]ue process does not require independent counsel for children in each and every case in which they are involved. . . . [T]he trial court shall appoint independent counsel, upon request of an interested party or *sua sponte*, where such counsel would contribute to promoting the child's best interest by serving an identifiable purpose such as advocating the child's position in the dispute or ensuring that the record be as complete and accurate as possible . . . .").

¶8　　　　Furthermore, pursuant to Rule 52(A) of the Rules of Procedure for the Juvenile Court, the purpose of an initial dependency hearing is for the court to determine "whether service has been completed and whether the parent . . . admits, denies or does not contest the allegations contained in the dependency petition." During an initial dependency hearing, the court is required to appoint counsel to persons entitled to counsel pursuant to Rule 38(B). Ariz. R.P. Juv. Ct. 52(C)(2). Here, the court not only appointed counsel for Mother during the initial dependency hearing, but also appointed K.C. counsel—the same attorney already representing him in his delinquency matters. In appointing K.C. counsel at the initial dependency hearing, the court committed no error.

¶9　　　　K.C. next argues the superior court deprived him of due process by failing to afford him notice of the initial dependency hearing and an opportunity to be heard. Again, K.C. did not raise this issue with the superior court, and we therefore review only for fundamental error. Even if the superior court erred by not affording K.C. notice and an opportunity to be heard at that hearing, any possible error was not fundamental.

¶10　　　　When a parent fails to appear at the initial hearing without good cause shown, the court may adjudicate the child dependent if the petitioner has established grounds upon which to adjudicate the child dependent, based on the record and evidence presented. Ariz. R.P. Juv. Ct. 52(C)(6)(c). Mother did not appear at the initial dependency hearing, and the superior court found she had failed to appear without good cause and thereby had waived her legal rights to contest the allegations in the dependency petition.

¶11　　　　When, as here, a parent has effectively admitted to the allegations by waiving her rights to contest them, no adjudication is required. No discernible purpose would be served by requiring the child to attend the initial hearing and to have an opportunity to speak with the

court. K.C offers no reason why any such error went to the foundation of his case, took from him a right essential to his defense, or was so egregious that he could not possibly have received a fair trial, *Escalante*, 245 Ariz. at 142, ¶ 21, and we discern none.

**¶12** Lastly, K.C. argues the court did not consider his best interests by failing to order his attendance at the initial dependency hearing. Assuming K.C. adequately raised this issue to the superior court during the disposition hearing, *supra* ¶ 4, we find no abuse of discretion.

**¶13** "[T]he Rules of Procedure for the Juvenile Court . . . recognize [that] a child's right to attend and testify at a hearing is not absolute. Although Rule 41(B) authorizes a child in foster care to attend 'the child's court hearing and speak to the judge,' Rule 36 directs that all juvenile rules of procedure 'should be interpreted in a manner designed to protect the best interests of the child, giving paramount consideration to the health and safety of the child.'" *K.D. v. Hoffman*, 238 Ariz. 278, 280, ¶ 7 (App. 2015).

**¶14** K.C. fails to indicate how his attendance at the hearing could have altered the outcome or why his best interests would have been better served. K.C.'s guardian ad litem—a court appointee tasked with protecting his interests pursuant to Rule 40(A)—was present at the initial dependency hearing, and K.C. does not articulate how the guardian ad litem failed to act. Accordingly, he has demonstrated no abuse of discretion.

## CONCLUSION

**¶15** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

5